```
        IN THE UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF ARKANSAS
                  WESTERN DIVISION

AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL EMPLOYEES,
LOCAL 2957; TERRY WHITE; BOBBY L.
ASHER; JOHN A. PARKS; AND BILL WYLLIA            PLAINTIFFS


V.                 CASE NO. 4:04-CV-492 (RSW)


CITY OF BENTON, ARKANSAS;
DOUG STRACENER, ALDERMAN;
PHILLIP MONTALVO, ALDERMAN;
KARLA J. HALEY, ALDERMAN;
WILLIE FLOYD, ALDERMAN;
RAY FREEMEN, ALDERMAN;
LEROY ALLEN, ALDERMAN;
ANN HALL, ALDERMAN; ROBIN BERRY,
ALDERMAN; CLAUDINE RAMSEY, ALDERMAN;
CHARLES CUNINGHAM, ALDERMAN; AND
RICK HOLLAND, MAYOR OF THE CITY
OF BENTON, ARKANSAS                              DEFENDANTS
```

**MEMORANDUM OPINION AND ORDER**

The Plaintiff, American Federation of State, County, and Municipal Employees, Local 2957 ("the Union"), has sued the City of Benton, Arkansas, and the City's Alderman, named in their official capacities as members of the City Council (collectively "the City"), claiming that the City unconstitutionally impaired the collective bargaining agreement ("the Agreement") that terminated December 2004. In an order dated January 27, 2006, this Court held that the City's March 2004 resolution unconstitutionally impaired the Agreement (doc. #39) but Court did not rule on a remedy. In January 2007, the Court held a bench trial to address the remedy. At the trial, the City made

an offer of proof, arguing the Court's prior order finding impairment did not need a remedy. This Court disagrees and finds that the Union is entitled to have the benefits of the Agreement enforced.

**I.  FACTS**

The Union is the collective bargaining representative of the City's non-uniformed employees. Plaintiff Terry White is the current president of the Union and is an employee of the City. Plaintiffs Bobby L. Asher, John A. Parks, and Bill Wyllia are retired employees of the City, who were receiving health insurance from the City during retirement. These individual plaintiffs settled their claims before trial and are no longer part of the case.

Since 1976, the Union has had a collective bargaining agreement with the City covering non-uniform employees of the City of Benton. The parties entered into the disputed Agreement on June 14, 2002. The Agreement established rates of pay, hours of work, and other conditions of employment. Specifically, the Agreement provided for fourteen paid holidays. In September 2003, the City Council passed an ordinance providing for eleven paid holidays instead of fourteen. The Union and the City settled the holiday pay issue before trial.

The Agreement also provided for various types of insurance for employees. Article XII, Section 5 of the Agreement states, "The Employer [the City] shall continue to provide health,

2

accidental death and dismemberment, disability, life and retirement insurance. Employee and employee dependent's health insurance coverage is set forth in Appendix B." (Exhibit 11). Similar language has been used in every collective bargaining agreement since insurance was first specifically provided for in 1982, and the language has remained unchanged since 1988 (Exhibit 5). Kathy Kirk, the City's human resources manager, testified the term "retirement insurance" referred to a defined-benefit retirement account. Terry White, a City employee and the current president of the Union, testified the term "retirement insurance" is health insurance paid to employees after retirement.

For as long as any witness could remember, the City had paid health insurance for all retired employees until the retiree reached age sixty-five. In 1989, the City adopted a resolution stating that the City would continue to pay health insurance for City employees who retired before December 31, 1989, until they reached age sixty-five, but for employees retiring after December 31, 1989, the City would only pay the premiums until age sixty-five if the employee had thirty years of service or more (Exhibit 15). The testimony was unclear whether this new resolution was applied to union-represented employees. However, Exhibit 20 shows a list of retirees that were paid health insurance after retirement, including several that had not attained the thirty years of service the 1989 resolution required. The logical inference is that the 1989 resolution was not applied to union employees. The Court received evidence that in 2003, the City

adopted a resolution under which the City would pay the premiums on a pro rata basis according to a retiree's years of service (Exhibit 16).  Retirees with twenty-eight years of service would have insurance paid until age sixty-five.  Retirees with fewer than ten years of service could remain on the insurance plan but were required to pay all of the premium.  Employees with more than ten years of service but fewer than twenty-eight years would receive a premium payment of three percent per year of service.  For example, someone who worked for the City for eleven years would have thirty-three percent of his or her insurance premiums paid.  The Court granted the Union's motion to amend its complaint to conform to the evidence to include a claim that the October 2003 resolution also unconstitutionally impaired the Agreement (doc. #62).  In March 2004, the City Council passed a resolution terminating the payment of health insurance for retired employees (Exhibit 17).

   In May 2004, the Union sued the City, asking the Court to enjoin the City from enforcing the March 2004 resolution.  The Union argued the City's actions impaired the Agreement in violation of the Contract Clause of the United States Constitution.  The City contended that the Agreement in question was void and that the City's actions could not impair an invalid contract.  The Court found the Agreement was valid, provided for payment of health insurance to retired employees, and the City unconstitutionally impaired that agreement with its March 2004 resolution.  The Court held, "As far as the Ordinance and

4

Resolution affect rights vested under the June 14, 2002 Collective Bargaining Agreement, they are **NULL AND VOID**."

In January 2007, the Court held a bench trial to address what remedy was appropriate. The Court allowed the City to make an offer of proof. The City argued that no remedy was required and that the Court's holding that the resolution was "null and void" was sufficient. The City also presented three new theories of the case. First, the City argued the Union should be estopped from raising its claims because it did not dispute the 1989 resolution or the October 2003 resolution. Second, the City presented evidence that the Agreement never provided for payment of retiree health insurance. Rather, the City paid the health insurance according to its own policy, separate from the Agreement, and thus could change the policy in its discretion. Finally, the City argued that if the Agreement did provide for insurance payments to retired employees, that part of the Agreement was void because it violated Ark. Code Ann. § 24-12-129. The Union argued the Court should enjoin enforcement of the resolution as to those employees hired and working under the Agreement, requiring the City to pay health insurance for those employees when they retired.

**II. DISCUSSION**

    **A.  The October 2003 Policy**

The Court allowed the Union to amend its complaint to conform to the evidence (doc. #62). The Union now alleges the

October 2003 resolution was also an unconstitutional impairment of contract.  For substantially the same reasons relied on in its January 2006 order (doc. #39), the Court agrees.  The Agreement was a valid agreement.  The October 2003 resolution was a legislative act that impaired a provision of the Agreement.  <u>See</u> <u>Minneapolis St. Ry. Co. v. City of Minneapolis</u>, 189 F. 445, 453 (D. Minn. 1911)(holding that resolutions of a city were legislative acts).  The October 2003 policy effectuated a fundamental change in the employee's expectations under the Agreement, so the impairment was substantial.  Finally, the City has failed to show the modification of retired employees' insurance was reasonable and necessary to serve an important public purpose.  Therefore, the October 2003 resolution unconstitutionally impaired the Agreement.

    **B.   The City's Offer of Proof**

The Law of the Case Doctrine requires this Court adhere to all of its prior rulings because both parties have relied on those rulings.  <u>See</u> <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").  After reviewing the evidence, the Court remains firm in its prior holding.  Therefore, the Court concludes that the City's arguments made in its offer of proof cannot reverse the Court's prior ruling and should have been raised in its motion to dismiss.  The Court has already held the

6

Agreement was valid and obligated the City to pay retiree's health insurance(doc. #39). Thus, granting any of the City's offer of proof arguments would be contrary to that order. However, the Court believes the City's offer of proof deserves some analysis.

### i. Estoppel

The City argues the Union should be estopped from claiming unconstitutional impairment of contract because it did not object to the 1989 or the 2003 resolutions. Arkansas law requires the City prove four elements for estoppel:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct must be acted on or must so act that the party asserting the estoppel has a right to believe the other party so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury.

Miller v. City of Lake City, 789 S.W.2d 440, 442 (Ark. 1990)

The Court concludes it need not engage in a long analysis of estoppel. Element three requires the City to prove it was ignorant of all the facts. However, the City was certainly aware of its own policies, resolutions, and other material facts. Therefore, the argument fails.

### ii. Interpretation of Article XII, Section 5

Article XII, Section 5 of the Agreement states, "The Employer [the City] shall continue to provide health, accidental death and dismemberment, disability, life and retirement insurance. Employee and employee dependent's health insurance

coverage is set forth in Appendix B." (Exhibit 11).  Appendix B states, "The City of Benton shall provide insurance coverage for each employee while employed with the City of Benton."  The Union argues "continue to provide health . . . and retirement insurance" means the City has to pay employee health insurance after retirement.  The City argues Appendix B clearly states the insurance obligation applied only to current employees.

Under Arkansas law, the Court must first interpret a contract "to give to the language employed the meaning which the parties intended."  <u>First Nat'l Bank of Crossett v. Griffin</u>, 832 S.W.2d 816, 169 (Ark. 1992).  The Court must give the words used their plain and ordinary meaning.  <u>Id.</u>  All clauses of a contract must be read together, giving each article legal effect.  <u>Id.</u> at 169-70.  However, when a contract is ambiguous, the Court may look outside the contract to the parties' course of dealing to resolve the ambiguity.  <u>Ne. Ark. Internal Med. Clinic, P.A. v. Casey</u>, 61 S.W.3d 850, 855 (Ark. Ct. App. 2001).  When a contract is silent on a disputed point, it is ambiguous.  <u>Id.</u> at 854.

As the City's counsel noted in the cross examination of Dale Rigsby, former Union president and signer of the 2002 Agreement, the Agreement is silent on retiree health insurance.  Because the Agreement is silent and each party presents a reasonable interpretation of the contract, an ambiguity exists.  The Agreement itself states, "The Employer [the City] shall continue to provide health . . . insurance."  The parties' course of dealing shows the City has paid for retiree's health insurance

8

for years. Although the City changed its policy through resolution in 1989, Exhibit 20 demonstrates the new policy was not applied to union-represented employees. The parties' course of dealing was that the City paid the retiree health insurance of union represented employees. Rigsby, the only signer of the Agreement to testify, testified his impression of the 2002 Agreement was that it provided for retiree health insurance, despite the language of Appendix B. Thus, the City's reliance on Appendix B fails, and the Union's interpretation of the Agreement is more plausible. The Court finds the Agreement provided for the payment of retiree health insurance.

### iii. Illegality of Article XII, Section 5

Lastly, the City argues the provision obligating payment of retiree insurance is illegal under Ark. Code Ann. § 24-12-129. Section 24-12-129 allows a retired municipal employee to stay on the municipality's health care plan when the employee meets certain requirements:

> When any municipal official or municipal employee age fifty-five (55) or over who has completed twenty (20) years of service to the municipality and who is vested in the retirement system retires, the official or employee may continue to participate in the municipality's health care plan, receiving the same medical benefits and paying the same premium as active employees as long as the retired official or employee pays both employer and employee contributions to the health care plan.

Section 24-12-130, Ark. Code Ann., clarifies Section 24-12-129:

> Nothing contained in § 24-12-129 should be interpreted to prevent a municipality from providing benefits contained in § 24-12-129 to retirees who are

9

>   less than age fifty-five (55) or who have completed
>   fewer than twenty (20) years of municipal service.
>   Further, any person who qualified and participated in a
>   municipal health care plan under § 24-12-129 shall
>   continue to be eligible to participate in the health
>   care plan after August 1, 1997.

When Section 24-12-130 was originally passed in 1997, it provided as follows: "Nothing contained in § 24-12-129 should be interpreted to prevent a municipality from providing <u>benefits greater</u> than contained in § 24- 12-129 . . . ." (emphasis added).

No Arkansas case has interpreted either statute. However, the Arkansas Attorney General interpreted them in 2004 (Attorney General Opinion 2004-312, doc. #48, exh. 1). The Attorney General concluded that Section 24-12-129's language that "as long as the retired official or employee pays both employer and employee contributions to the health care plan" prohibited a municipality from paying insurance premiums for retired employees. <u>Id.</u> at 6. The Attorney General looked to Section 24-12-130 and its 2001 amendment as support that a municipality is completely barred from paying retiree health insurance. <u>Id.</u> at 6-7.

An attorney general's opinion is not binding precedent. <u>Ark. Prof'l Bail Bondsman Licensing Bd. v. Oudin</u>, 69 S.W.3d 855, 862 (Ark. 2002). When interpreting an Arkansas statute, the Court must interpret the statute as it is written, giving the text is ordinary meaning. <u>Id.</u> at 863.

The plain text of Section 24-12-129 gives municipal employees the right to maintain their insurance coverage after

10

Case 4:04-cv-00492-RSW Document 65 Filed 02/13/07 Page 11 of 13

retirement.  Section 24-12-130 allows a municipality discretion to provide continuing insurance to employees who have not met Section 12-24-129's age and longevity requirements.  The plain reading of both statutes is to protect employees from an insurance lapse.  Although the statute initially places the payment of premiums on the employee, the statute does not say municipalities shall not pay any contribution to the health care plan.  The policy behind the statute suggests the Arkansas legislature wanted to protect employees but did not want to place the financial burden on the taxpayer.  It did not, however, ban a city council outright from using paid retiree health insurance as a collective bargaining tool.  The Court concludes this is the better reading of the statute.  Thus, it does not make the Agreement illegal and void.

### III. ORDER FOR JUDGMENT

The Court affirms its prior rulings that the City's October 2003 resolution, reducing the City's payment of health insurance premiums for retired employees with less than twenty-eight years of service, and the City's March 2004 resolution, terminating the City's payment of health insurance premiums for retired employees, are unconstitutional impairments of the Agreement in violation of the Contract Clause of the United States Constitution.  As far as the Resolutions affect rights vested under the June 14, 2002, Collective Bargaining Agreement, they are **NULL AND VOID.**

11

For the following twenty-nine current city employees, listed in Appendix A of this Order, who are represented by the Union, AFSCME Local 2957, and worked under the Agreement past the contract probationary period so that the contract rights vested as to them prior to the December 31, 2004, termination date of the Agreement, the City is **ENJOINED** from enforcing the October 2003 and May 2004 Resolutions against them.  If the listed employees retire from employment with the City for any reason and with any length of service, the City shall continue to pay these employees' health insurance, at whatever premium payment and coverage the City is then providing for active employees.  The Union shall receive its costs and disbursements of this action.

**IT IS SO ORDERED.**

Dated this 13th day of February, 2007.

RODNEY S. WEBB, District Judge
United States District Court

## **Appendix A**

City of Benton Employees and AFSCME Union Members Protected by this Injunction:

```
     Name                              Date of Hire
1.   Ashley, Hermon W. III             5/23/1994
2.   Babbitt, Paul H.                  5/24/1999
3.   Barnes, Sammy G. II               11/4/1991
4.   Blair, Betty S.                   6/1/1989
5.   Cuningkin, Dannie L.              1/4/1988
6.   Davis, Gary D.                    2/14/1989
7.   Fitzhugh, Gary, L.                10/27/1986
8.   Hendrix, Alan D.                  5/4/1978
9.   Isenhower, Martin A.              5/1/1984
10.  Jackson, Stephen L.               12/11/1989
11.  Langley, Larry H.                 10/21/1979
12.  Lewis, Larry O.                   2/9/1977
13.  Lockridge, Ricky L.               5/21/1973
14.  Massey, Kenneth K.                5/22/1978
15.  Middleton, Candace A.             8/4/1999
16.  Morehead, Tracey L.               4/12/1999
17.  Phifer, Jason N.                  7/17/2000
18.  Posey, James T.                   10/21/2002
19.  Prysock, James D.                 7/1/1985
20.  Rigsby, Joseph D.                 7/25/1983
21.  Rowan, Michael L.                 6/10/1996
22.  Sewell, Jennings L.               3/9/1981
23.  Smith, Dan J.                     8/26/1994
24.  Solomon, Andy N.                  12/4/2000
25.  Vocque, Lucas W.                  3/8/2001
26.  Welch, Kenneth E.                 2/1/1986
27.  White, Terry D.                   4/6/1987
28.  Wright, Mollie C.                 2/3/1997
29.  Young, Deidre L.                  11/3/1986
```